IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00686-WDM-BNB

MARTIN RAMIREZ, et al.,

    Plaintiffs,

v.

eWORK, INC., et al.,

    Defendants.

## ORDER ON MOTION TO STRIKE AND MOTION TO DISMISS

Miller, J.

This matter is before me on Defendants' Motion to Strike Portions of Amended Class Action Complaint Under Fed. R. Civ. P. 12(f) (doc no 50) and Defendants' Motion to Dismiss (doc no 51). Plaintiffs oppose the motions. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motions are denied.

### Background

Plaintiffs filed this action on behalf of a class of individuals and entities who paid the Defendant entities a fee to become an "Affiliate" or "Affiliate Service Provider" from January 1, 2000 to the present. Amended Class Action Complaint ("Complaint") ¶ 1. Defendant eWork Markets, Inc. ("eWork Markets"), was formerly known as ProSavvy Inc. ("ProSavvy") and has also held itself out under other names. Complaint ¶ 19. According to Plaintiffs, ProSavvy, and then eWork Markets, through website, email

solicitations, and internet advertisement falsely represented ProSavvy as a service that would enable ProSavvy "Affiliates" the ability to locate business leads and have direct contact with ProSavvy "Clients," i.e., business and governmental entities that retained ProSavvy to help them locate outside consultants and professionals to perform a variety of functions. Complaint ¶ 4. Plaintiffs and the proposed class members are persons and entities who paid a fee to become ProSavvy Affiliates. Complaint ¶ 5. Plaintiffs contend that the emails and solicitations were false in that projects listed were generic, were duplicates of projects posted on publicly available websites, or may have been fabricated. Complaint ¶¶ 7-9. Plaintiffs further allege they were subjected to aggressive collection efforts when they sought to cancel or obtain refunds of the fees paid. Complaint ¶ 11. Plaintiffs seek to pierce the corporate veil to hold eWork, Inc., the parent company of eWork Markets/ProSavvy, liable. Complaint ¶¶ 12, 18, 19, 60-71.

Plaintiffs originally filed this action in the Illinois Circuit Court of Cook County on May 14, 2004, asserting claims under the Illinois Consumer Fraud Act. Complaint ¶¶ 26, 28. The Illinois court ruled that Colorado, not Illinois, law applied and on March 16, 2006, dismissed the case on the grounds that a forum selection clause in the Affiliate Terms and Conditions required prosecution of the case in Colorado. Complaint ¶¶ 31-34. Plaintiffs filed their complaint in this court on April 12, 2006.

Plaintiffs assert three causes of action: (1) violation of the Colorado Consumer Protection Act ("CCPA") against both Defendants; (2) Breach of Contract against eWork Markets, Inc./ProSavvy; and (3) Unjust Enrichment against both Defendants.

2

Defendants seek to strike certain portions of the Amended Complaint and to dismiss several of the claims in their entirety.

## Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are disfavored. *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (citing 5 Wright & Miller, Federal Practice and Procedure § 1380, at 783 (1969)). "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *United States v. Smuggler-Durant Mining Corp.*, 823 F.Supp. 873, 875 (D.Colo.1993). Motions to strike are usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced. *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). "In deciding whether to [grant] a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Shell Oil*, 605 F. Supp. at

1085 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976)). Only allegations "so unrelated to plaintiff's claims as to be unworthy of any consideration" should be stricken. *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)).

## Discussion

1.  <u>Motion to Strike</u>

Defendants seek to strike three general portions of the Amended Complaint. First, Defendants seek to strike allegations relating to the class period, January 1, 2000 to the present, to the extent such claims are time-barred. Second, Defendants contend that allegations regarding efforts to settle one of the named Plaintiff's claims should stricken. Finally, Defendants seek to exclude allegations relating to collection efforts against a purported class member who is not a named plaintiff.

Defendants argue that any allegations concerning conduct occurring more than three years before the date of the filing of this case should be stricken, including the asserted class period. There is no dispute that the CCPA claims and claims of breach of contract are subject to a three-year statute of limitations. However, Colorado subscribes to the discovery rule, which provides that a cause of action generally accrues when a claimant "knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action." *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991). While often a party might learn of all such material facts at the same time, it is conceivable that conduct occurring before April 12, 2003 (three years before the case was filed in this

court) might not give rise to a cause of action until a later date, such as when the plaintiff discovers that certain representations were untrue or that the plaintiff was injured by the conduct. Moreover, it is possible that the statute of limitations was tolled during the pendency of Plaintiffs' previous action in the Illinois court or that claims are subject to Colorado's remedial revival statute, C.R.S. § 30-80-111. Whether any of Plaintiffs' claims or the claims of the proposed class members are barred by the statute of limitations are questions of fact and I cannot determine as a matter of law that no evidence in support of these allegations would be admissible.

Similarly, I decline to strike the allegations concerning Gina Villani, a purported prospective class member, whom Plaintiffs allege was subjected to aggressive collection efforts by Defendants. These allegations are offered in support of Plaintiffs' claim for injunctive relief, seeking to enjoin Defendants from attempting to collect debts from Affiliates. Defendants contend that these allegations are duplicative and immaterial. Plaintiffs do not rely on the unnamed class member for standing purposes; indeed, named class members also allege they have suffered injury from collection efforts that should be enjoined. Ms. Villani's experience is offered as further example of the alleged injurious practice. Defendants have cited no case law that precludes allegations concerning the injuries of unnamed proposed class members where named class members allege they have suffered from the same conduct. The events concerning Ms. Villani appear to be relevant and I discern no prejudice to Defendants, as the alleged facts are relatively uncomplicated.

Finally, I disagree with Defendants that their efforts at settling with Plaintiff

Martin Ramirez should be stricken. Defendants contend that since evidence of conduct or statements made in compromise negotiations is inadmissible to prove liability under FRE 408, even pleadings containing such allegations should be stricken. However, FRE 408 contemplates that such evidence may be admissible for other purposes, and so I cannot say that these allegations are so unrelated as to be unworthy of any consideration. Accordingly, under the standards governing a motion to strike, Defendants are not entitled to the relief they seek.

2.      Motion to Dismiss

Defendants seek to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). First, they contend that the CCPA claim fails because Plaintiffs have not alleged facts showing that Defendants engaged in an unfair or deceptive trade practice or that any alleged practice significantly impacts the public. They also argue that Plaintiffs cannot demonstrate that eWork Markets is the alter ego of eWork, Inc. Defendants next assert that Plaintiffs cannot state a claim for breach of contract because the allegations do not demonstrate a breach and that the unjust enrichment claims are barred because of the existence of an express contract. Finally, Defendants contend that all claims of Plaintiff Synergest, Inc. ("Synergest") are barred by the statute of limitations. I will address each claim in turn.

   A.   CCPA

To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or

occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003).

"The CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Rhino Linings*, 62 P.3d at 146. Deceptive trade practices include a false representation that induces a party to act or has the capacity or tendency to attract consumers. *Id.* at 147-48.

Taking the allegations as true and drawing all reasonable inferences in favor of Plaintiffs, I conclude that Plaintiffs' allegations could demonstrate a deceptive trade practice. Plaintiffs allege that eWork Markets/ProSavvy distributed advertisements falsely representing that it would provide access to a significant number of clients and projects, that Affiliates could negotiate directly with clients, and that they would have access to "more than $100 million dollars in project opportunities annually." Complaint ¶¶ 42-46. These advertisements and solicitations induced Plaintiffs to pay a significant fee to become Affiliates but in most cases clients were unidentified, eWork Markets/ProSavvy did not have nearly as many clients or project opportunities as represented, some projects were copied from public advertisements, and some of the supposed "projects" may not have existed at all. Complaint ¶¶ 49-53. Plaintiffs allege further conduct that reasonably gives rise to an inference that Defendants acted with

fraudulent intent, including frequent name changes, complaints to the Better Business Bureau, and refusal by the Defendants to disclose the percentage of Affiliates who procured projects through eWork Markets/ProSavvy's services. Complaint ¶¶ 19, 38, 54.

These allegations demonstrate more than simply a failure to fulfill a contractual promise, as Defendants assert, but rather could constitute false statements of existing material fact having the tendency to deceive potential consumers about the number and quality of clients and projects available to Affiliates. Accordingly, Plaintiffs have adequately alleged this element of a CCPA claim.

Defendants also argue that Plaintiffs cannot state a claim against eWork, Inc., the parent company, since no representations were made by this entity. I will discuss Plaintiffs' allegations concerning piercing the corporate veil below.

Defendants further assert that Plaintiffs' allegations are insufficient to show that the alleged deceptive conduct has a public impact. The relevant considerations in determining public impact are (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future. *Rhino Linings*, 62 P.3d at 149. Applying these factors, Plaintiffs have sufficiently alleged a public impact.

First, Plaintiffs allege that the class consists of no less than 2000 to 2500 Affiliates. Complaint ¶ 22. This is a significant number of consumers directly affected

8

by Defendants' alleged practices. Turning to the second factor, although some of the Affiliates may be somewhat sophisticated in business, most of them appear to be individuals or small business operations with little bargaining power. This also weighs towards finding a significant public impact. Finally, Plaintiffs allege that Defendants advertise and solicit their business on the Internet, which has the potential to impact a large number of consumers. Under these circumstances, and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have alleged sufficient facts to plausibly suggest that Defendants' conduct has a significant public impact.

I reject Defendants' argument that this case concerns a private dispute involving a simple breach of contract, which would not be appropriate under the CCPA. Unlike *Rhino Linings,* cited by Defendants, Plaintiffs have alleged that they were induced to pay the Affiliate fees and enter into Affiliate agreements based on deceptive advertising and representations. Such conduct falls within the scope of the CCPA and its remedial purpose of protecting consumers from deceptive trade practices.

2.   Corporate Veil

Plaintiffs allege that ProSavvy's wrongful conduct reaches back to 2000; however, according to their own allegations, eWork, Inc., did not acquire ProSavvy until January 2005. Complaint ¶ 62. Plaintiffs have not alleged any connection between ProSavvy and eWork, Inc., prior to the acquisition. Accordingly, eWork, Inc., could not possibly be directly liable for conduct occurring before the acquisition. However, it is possible that if the subsidiary's assets were improperly transferred to the parent, separate corporate existence might not prevent the Plaintiffs from reaching those

assets if they prevail.

After the acquisition, and when ProSavvy's name was changed to eWork Markets, Plaintiffs allege that the two entities shared the same officers and have not held themselves out as having separate corporate existence, at least on the Internet. Complaint ¶¶ 63-70. Plaintiffs allege that the assets of ProSavvy were shifted to eWork, Inc., and that eWork Markets appears to operate as a mere division of eWork, Inc. Complaint ¶¶ 66, 69-70.

Determination of whether a parent company is using its subsidiary as a mere instrumentality such that piercing the corporate veil is justified is primarily a question of fact. *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1221 (10th Cir. 1997). Disregarding separate corporate existence is justified when "the corporate structure is used so improperly that the continued recognition of the corporation as a separate legal entity would be unfair." *Id.* at 1220. Under Colorado law, the following factors are evaluated:

> (1) The parent corporation owns all or majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but

> take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Id.* at 1221.

Although it is a close issue, in light of the standard I must apply on a motion to dismiss, I conclude that Plaintiff has alleged sufficient facts to plausibly state a claim that eWork Markets has operated as a mere instrumentality of eWork, Inc. Plaintiffs have alleged that eWork, Inc., owns all the capital stock of the subsidiary and that the two corporations share common directors or officers. Plaintiffs have further alleged that eWork, Inc., represents that it has its own "consultant supplier network," which appears to be the Affiliates associated with eWork Markets, thus blurring the division between the two entities. Complaint ¶ 69. In addition, Plaintiffs have alleged that recognizing the separate corporate existence could result in an injustice if ProSavvy's assets were indeed transferred to eWork, Inc., and were therefore unavailable to satisfy a judgment. Since several factors which would support piercing the corporate veil are present and this is a factual determination, I conclude that dismissal of claims against eWork, Inc., is not appropriate.

### 3. Breach of Contract

Defendants argue that Plaintiffs cannot state a claim for breach of contract because eWork Markets/ProSavvy delivered exactly what it promised, business leads and the opportunity to bid on projects, which the Plaintiffs did. Plaintiffs argue that the leads were not legitimate and the business opportunities were not what was advertised. I agree with Plaintiffs that they have sufficiently alleged that they did not receive the

11

benefit they bargained for based on the representations made about the services eWork Markets/ProSavvy would provide.

### 4. Unjust Enrichment

Defendants contend that the unjust enrichment claim fails because this quasi-contractual equitable remedy is generally not available when an express contract covers the same conduct. *Scott Co. v. MK-Ferguson Co.*, 832 P.2d 1000, 1002 (Colo. App. 1991). Plaintiffs note that there are two exceptions to this principle: (1) a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract; and (2) a party can recover on a quasi-contract when the party "will have no right under an enforceable contract." *Interbank Investments, LLC v. Eagle River Water & Sanitation Distr.*, 77 P.3d 814, 816 (Colo. App. 2003) (citations omitted). Plaintiffs contend that their unjust enrichment claims rest on the premise that terms should be implied into the Affiliate agreements to the extent they are not there or to the extent the contract fails.

To recover restitution in a claim of unjust enrichment, a plaintiff must demonstrate "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *DCB Constr. Co., Inc. v. Central City Development Co.*, 965 P.2d 115, 119-20 (Colo. 1998). "A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. He confers a

benefit not only where he adds to the property of another, but also where he saves the other from expense or loss." *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093, 1097 (Colo. 1982). At this stage of the case, to the extent that Defendants received a benefit not covered by the agreement, in the form of Plaintiffs' fees, which was retained and appreciated by Defendants under circumstances that would be inequitable, Plaintiffs may state a claim for unjust enrichment.

     5.     <u>Statute of Limitations</u>

Finally, Defendants claim that Plaintiff Synergest's claims are barred by the statute of limitations. The Amended Complaint alleges that Synergest entered into its Affiliate contract on or about March 26, 2003 and that it "quickly learned" that eWork Markets did not provide the alleged promised business leads. As noted above, this case was filed in this court on April 12, 2006 and a three-year statute of limitations applies to the CCPA and breach of contract claims. No precise date is given of when Synergest actually discovered that it allegedly did not receive the services it bargained for or believed were available. Defendants are again reminded that all reasonable inferences must be drawn in favor of Plaintiffs. It is quite reasonable to conclude that it took Synergest more than 17 days to discover the alleged wrongdoing, particularly in light of the allegations that Synergest bid for several projects over several months. Therefore, dismissal is not appropriate on this basis.

Accordingly, it is ordered:

1.     The Motion to Strike Portions of Amended Class Action Complaint Under Fed. R.

Civ. P. 12(f) (doc no 50) is denied.

2. The Motion to Dismiss (doc no 51) is also denied.

DATED at Denver, Colorado, on September 18, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge